**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LOIS A. ARONOVITZ,**

    **Plaintiff,**

v.                                                          Case No.  8:05-cv-1677-T-TBM

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for a period of disability and Social Security disability benefits.  For the reasons set out herein, the decision is reversed and remanded for an award of benefits.

I.

Plaintiff was forty-one years of age at the time of her administrative hearing.  She stands 5', 1" tall and weighed 125 pounds, 45 pounds less than when she was working, a loss Plaintiff attributes mostly to nausea and vomiting.  She has a high school education and past relevant work as a fashion coordinator and cosmetics sales clerk.  Plaintiff applied for a period of disability and disability benefits in January 2003, alleging disability as of August 31, 2001, due to chronic fatigue, lyme disease, pain, and memory problems.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff claimed that she no longer could work because of fatigue and pain that she experiences all over, concentrated mostly in her back, but also in her joints, arms, and muscles. On a scale from one to ten, Plaintiff described her pain as a six to seven, and said that it varies from day to day. Plaintiff testified that she has been diagnosed with fibromyalgia and lyme disease, and that she was on antibiotics (presumably for the lyme disease) for almost two years straight. She has tried approximately 30 different antibiotics, both intravenous and pill form, but has obtained no relief. About a year and a half prior to the hearing, Plaintiff went to the Mayo Clinic for three weeks because she had seen almost 20 doctors in Tampa and wanted to see if more could be done for her. Plaintiff said that while there, she received a definitive diagnosis of fibromyalgia and spent one week in a fibromyalgia clinic. She also was told that she also suffered from depression as a result; she takes an antidepressant but does not see a psychiatrist. Plaintiff has difficulty sleeping and has to take heavy medication at night to be able to sleep.

Plaintiff also experiences occasional headaches, which she attributes to a bulging disc in her neck. She has problems with frequent urination and urinary tract infections and often has to run to the bathroom. Plaintiff has occasional bouts with diarrhea and has been diagnosed with irritable bowel syndrome. She also suffers from tremors and problems falling, and has consulted with a neurologist. Although the report from the Mayo Clinic indicated that her memory was normal, Plaintiff disagrees and alleges memory lapses.

Plaintiff worked for the Home Shopping Network for over ten years. According to Plaintiff, she tried to work for about the first two years of her illness, but called in sick often due to pain and fatigue. Her supervisor(s) allowed her to work part-time for awhile, but it did

not work out. Plaintiff utilized her sick leave, vacation time, and took a couple leaves of absence before she quit working. She had short and long-term disability, but it ended sometime in 2002.

Plaintiff described limited daily activities. On a typical day, she gets up around 11:00 a.m., watches television, reads the newspaper, and lies down for two hours in the afternoon around 4:00 p.m. because that is when her pain gets worse. On a good day, she can run a load of dishes or do a load of laundry, but she has difficulty vacuuming. She will then spending the rest of the afternoon reading in bed. On a bad day, she cannot even get of bed and has to take pain medication. Plaintiff's husband does most of the cooking and he does the yard work. Once a week, Plaintiff drives to the grocery store and to see her mother-in-law. She limits her driving due to her eyesight, tremors, and problems falling. Once every three weeks or so she goes grocery shopping for her mother-in-law. Plaintiff testified that she used to be a lot more active; she used to go fishing with her husband and get together with friends on weekends. Now, the only hobby she still enjoys is sewing a little bit. Plaintiff went to Jamaica for seven days the year before the hearing, but did nothing but lie on the beach and nap, and she went to Scotland to visit family about two years before the hearing.

When asked by her attorney if she could work a job that allowed for sitting most of the time, with no lifting over ten pounds, and did not require a lot of stress, Plaintiff said that she could not because she is unable to sit for eight hours due to back pain and she would have to get up and stretch. She also said that she would be unreliable because she would have to call in sick. Plaintiff testified that it is easier for her to keep her symptoms under control when she can stay home during the day and take medication when needed and lie down when tired. See Plaintiff's testimony (R. 38-58).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of May 13, 2005, the ALJ determined that while Plaintiff has severe impairments related to chronic lyme disease, fibromyalgia, chronic fatigue syndrome, degenerative spondylosis at C5-6, and irritable bowel syndrome, she nonetheless had the residual functional capacity to perform sedentary work with certain modifications, i.e., she could perform postural movements on an occasional basis. Upon this determination and application of the Medical-Vocational Guidelines, the ALJ concluded that Plaintiff was not disabled. (R. 26-27). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, et seq. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled.

5

These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred by failing to fully and adequately develop the evidence in this matter; and

(2) The Commissioner erred in failing to utilize a vocational expert in determining that the Plaintiff could perform other work activity.

By her first claim, Plaintiff argues that the ALJ erred by (1) minimizing and rejecting the opinion of her treating physician, Michael J. Cichon, M.D., and (2) failing to fully and properly evaluate the effect that the signs and symptoms of fibromyalgia and chronic fatigue syndrome had on her credibility and ability to work. Relying on Moore v. Barnhart, 405 F.3d

1208 (11th Cir. 2005),[1] Plaintiff contends that these errors resulted primarily from the ALJ's improper reliance on the lack of objective findings with regards to fibromyalgia.[2] (Doc. 19 at 6-12).

     Here, the ALJ determined that Plaintiff's fibromyalgia and chronic fatigue syndrome constituted severe impairments under the Act (R. 26), but he accorded little weight to the opinions of Plaintiff's treating physician, Dr. Cichon, and to Plaintiff's subjective testimony regarding pain and fatigue (R. 21-24). Plaintiff's treating physician, Dr. Cichon, completed a "Fibromyalgia Residual Functional Capacity Questionnaire" on April 23, 2003, indicating that Plaintiff met the American Rheumatological criteria for fibromyalgia and also suffered from chronic fatigue syndrome and probable lyme disease. (R. 253). He opined that the Plaintiff's symptoms would frequently interfere with attention and concentration and she had a moderate limitation in the ability to deal with work stress. He opined further that Plaintiff: could walk

---

[1] In Moore, the appellant argued that the ALJ's decision improperly focused on the absence of objective findings to corroborate her subjective complaints associated with fibromyalgia and conflicted with the court's prior decision in Stewart v. Apfel, 245 F.3d 793, 2000 U.S. App. Lexis 33214 (11th Cir. Dec. 20, 2000) (reversing the ALJ's finding that a fibromyalgia claimant's doctor's testimony was not credible based on a lack of objective evidence and ordered an of benefits) (unpublished). Moore, 405 F.3d at 1211. The Court found Moore's reliance on Stewart unavailing, and rejected her claim on the basis that the lack of objective evidence did not form the basis for the ALJ's adverse credibility finding in her case. Id. at 1212.

[2] "Fibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue and tenderness. . . . Many people with fibromyalgia also experience additional symptoms such as fatigue, headaches, irritable bowel syndrome, irritable bladder, cognitive and memory problems . . . and depression. . . . Pain and tenderness are the defining characteristics of fibromyalgia . . . [t]here are no what are called 'objective markers' – evidence on x-rays, blood tests, or muscle biopsies – for this condition, so patients have to be diagnosed based on the symptoms they are experiencing." American College of Rheumatology, http://www.rheumatology.org/public/factsheets/fibromya_new.asp? (last updated June 2006).

two blocks without rest; could continuously sit and stand for one hour each at a time, could sit and stand/walk for less than two hours each in an eight-hour day, needed to be able to shift positions at will, would occasionally need unscheduled breaks two to three times a day for one to two hours at a time and would often need two to three full days [off] at a time, would likely be absent from work more than three times a month, could occasionally lift ten pounds, and had a significantly reduced ability to grasp, engage in fine manipulation, and reach. (R. 53-58). In addressing this opinion, the ALJ stated:

> Considering the overall record, I find that controlling weight (SSR 96-2p) cannot be given to the opinions of Dr. Cichon. Although Dr. Cichon has had a treating relationship with the claimant during the period in question, he is not a specialist and he referred the claimant to other specialists, rheumatologists, neurologists, etc. for evaluations and treatment. His continued diagnosis of Lyme disease is inconsistent with the detailed evaluation by the specialist at the Mayo Clinic. The treatment notes by Dr. Cichon do not contain the detailed findings reported by the specialists and he based his opinions primarily on the claimant's subjective complaints. In this regard, the examinations by the numerous specialists, as summarized above, and the diagnostic studies have revealed few objective findings to support the claimant's alleged pain and fatigue. The claimant has no neurological deficit associated with the degenerative spondylosis, C5-6 and her irritable bowel syndrome is controlled with prescription medication. The claimant's symptoms have been found to be related primarily to her fibromyalgia and chronic fatigue syndrome.

(R. 24-25). After recounting Plaintiff's subjective testimony, the ALJ explained that:

> The claimant's testimony regarding the degree of her limitations is not fully credible. The claimant's activities detailed above, including her trips to Jamaica and Scotland, are inconsistent with the degree of limitations alleged by the claimant. She continues to smoke despite being advised to stop by her doctors. The claimant has required no inpatient treatment for any of her impairments. As detailed above, she has received no mental health treatment and has failed to establish any severe mental impairment. Although the claimant complained of difficulty with prolonged sitting at the hearing, she reported no such complaints at the time of the consultative examination on October 16, 2003. She reported only minor difficulty with standing or walking greater than 10 to 15 minutes and the need to avoid heavy lifting during an eight-hour day.

8

> \*\*\*
> The clinical findings reported by the treating and examining physicians also fail to support the degree of pain and functional limitations alleged by the claimant. The medical records establish . . .

(R. 21).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 404.1527(d)(2). Good cause for rejecting a treating source's opinion may be found where such opinion is not supported by the evidence, where the evidence supports a contrary finding, or where the doctor's opinions are conclusory or internally inconsistent. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Where the Commissioner has failed to properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

If the ALJ determines not to credit a claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Foote v. Chater, 67 F.3d 1553, 1561-62 (1995). Where the ALJ's stated reasons for discounting a claimant's subjective allegations are not supported by substantial evidence, the claimant's pain testimony is accepted as true. See Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).

Upon careful consideration, I conclude that the reasons cited by the ALJ for rejecting Dr. Cichon's opinions do not establish the requisite good cause required for doing so and his reasons for discounting Plaintiff's subjective allegations are unsupported. As for his rejection of Dr. Cichon's assessment, the Commissioner is correct that a physician's specialization is

9

one factor that an ALJ may consider in determining the weight to accord a medical opinion. See 20 C.F.R. § 404.1527(d)(5). However, I do not find that reason establishes good cause in this instance. Notably, while fibromyalgia typically may be diagnosed more often by rheumatologists, the specialists most commonly associated with disease, the record does not reflect that Dr. Cichon was unfamiliar with the condition or otherwise unqualified such that his opinion ought not be given deference, particularly in light of the fact that his records and/or opinions are not inconsistent with those of other examining doctors and the only rheumatologist of record, Dr. Elizabeth H. Zable. None of the medical opinions of record disagreed with Dr. Cichon's diagnosis of fibromyalgia and/or chronic fatigue syndrome despite the lack of objective evidence supporting it. Moreover, as recognized by the American College of Rheumatology,

> Fibromyalgia is not a form of arthritis (joint disease) and does not cause inflammation or damage to joints, muscles or other tissues. However, because fibromyalgia can cause chronic pain and fatigue similar to arthritis, it may be thought of as a rheumatic condition. As a result, it is often the rheumatologist who makes the diagnosis (and rules out other rheumatic diseases), but your primary care physician can provide care and treatment for fibromyalgia.

http://www.rheumatology.org/public/factsheets/fibromya_new.asp? (last updated June 2006). To the extent that Dr. Cichon referred Plaintiff to specialists for consultations, it appears that such were made to rule out possible causes of her symptoms and I do not find those actions sufficient reason to discount his opinion. Similarly, I do not see what bearing Dr. Cichon's continued diagnosis of probable Lyme disease, inconsistent as it may be with the opinion of a consulting infectious disease doctor from the Mayo Clinic, has on the doctor's opinion as set fort in a document captioned "Fibromyalgia Residual Functional Capacity Questionnaire,"

which notably was rendered *prior* to Plaintiff being seen at the Mayo Clinic.[3]  Notably, the ALJ determined that Plaintiff's "chronic lyme disease" was a severe impairment.  (R. 26).  Further, while Dr. Cichon's treatment notes are often cryptic, they consistently documented Plaintiff's symptoms, medication management, testing ordered, referrals made, and objective findings when present.  See, e.g., (R. 347-85).  Moreover, it appears that the reason the doctor's notes did not contain as much detail as some of the specialists was that Plaintiff's physical examinations remained essentially normal, aside from the trigger points which he noted.  Significantly, this stated reason is closely tied to the ALJ's final reason for discounting the doctor's opinion, namely, that it is unsupported by objective evidence and based primarily on Plaintiff's subjective complaints.  Typically, that reason would be among the acceptable reasons for discounting a treating physician's opinion and a claimant's subjective complaints, however, under the circumstances that exist in this case it was improper.  See Stewart, 245 F.3d 793, 2000 U.S. App. Lexis 33214, at *7-10 (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence); Green-Younger v. Barnhart, 335 F.3d 99, 107-09 (2nd Cir. 2003) (providing that a doctor's opinion regarding functional limitations is not undermined by reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia, and noting that, "in stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle

---

[3]In any event, the record regarding Lyme disease appears inconclusive.  Although Plaintiff's serology for the condition was negative when tested at the Mayo Clinic and Dr. E. Van Scoy opined that he did not believe that Plaintiff ever had Lyme disease, see (R. 317, 319), Dr. Cichon indicated *probable* Lyme disease and the diagnosis was supported by lab work and accepted by other physicians, see (R. 159, 253, 260, 297).

strength and neurological reactions"); Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (noting that "fibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms," its cause is unknown, there is no cure, and it is poorly understood within much of the medical community); see also Harrison's Principles of Internal Medicine, 1706-07 (Kurt J. Isselbacher et al., eds., 13th ed. 1994) (reporting that, with fibromyalgia, joint and muscle examination typically is normal).

The ALJ's reasons for discounting Plaintiff's subjective complaints are also inadequate. As with his consideration of Dr. Cichon's opinions, the ALJ improperly rejected Plaintiff's allegations primarily on the basis of a lack of objective evidence. See Stewart, 245 F.3d 793, 2000 U.S. App. Lexis 33214, at *9; Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); cf. Moore, 405 F.3d at 1212. Although the ALJ cited other reasons for discounting Plaintiff's subjective complaints, I do not find them persuasive. That Plaintiff traveled once to Jamaica and once to Scotland is not inconsistent with disability, particularly in light of Plaintiff's explanation at the hearing as to how she was able to do so.[4] See (R. 53-54). Additionally, I do not see how Plaintiff's continued smoking of one pack of cigarettes a week in the face of her doctors' urging to quit impacts her credibility. The same is true with regards to the fact that she has not received any mental health treatment and that she did not report to the consulting doctor in 2003 that she had difficulty sitting.

Because the ALJ failed to demonstrate good cause for discounting Dr. Cichon's opinion and his reasons for rejecting Plaintiff's subjective allegations are not supported by substantial evidence, as a matter of law in this circuit, the evidence is accepted as true. See

---

[4] In any event, the ability to do the limited activities identified by the Plaintiff would not reveal her ability to consistently work at a job five days a week, eight hours a day.

MacGregor, 786 F.2d at 1053 (treating physician); Hale, 831 F.2d at 1012 (claimant). Although a vocational expert did not testify at the administrative hearing, Teresa Manning, a vocational expert typically utilized by ALJs in this area, completed a report upon request of Plaintiff's counsel after reviewing Plaintiff's records, including those of Dr. Cichon. See (R. 120-27). By that opinion, the expert opined that Plaintiff would be unable to perform any work if Dr. Cichon's opinion was credited and/or if Plaintiff's self-described limitations were accepted as true. (R. 127). Accordingly, remand for further consideration of this matter is not warranted, and Plaintiff's case is reversed and remanded for an award of benefits as of the date of Dr. Cichon's fibromyalgia assessment.[5]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards. The decision is reversed and remanded for an award of benefits consistent with this Order. Accordingly, the Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 15th day of September 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[5] In light of this result, Plaintiff's other allegation of error need not be addressed.